JACOB GLOS

*v.*

ELLEN FLANEDY.

*Opinion filed February 17, 1904.*

1. MASTERS IN CHANCERY—*master cannot compel payment of fees as condition to hearing evidence.* The master in chancery has no power to demand payment of fees from a defendant before allowing him to give his evidence in a case referred to the master to take and report the testimony.

2. SAME—*master must take testimony offered by each party.* On reference of a chancery case it is the duty of the master to take the testimony of the witnesses produced by each party and to accord to each the right of cross-examination.

HAND, C. J., and CARTWRIGHT, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

ENOCH J. PRICE, for appellant.

ROBERT VANSANDS, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was a petition filed by Ellen Flanedy in the circuit court of Cook county on March 28, 1902, to establish and confirm her title to certain property in the city of Chicago under the Burnt Records act. Appellant, Jacob Glos, was made a party defendant to the petition, and filed an answer denying the petitioner was the owner in

fee simple of the property described in the petition, and, on the contrary, alleged that himself and Emma J. Glos are the owners by reason of a certain tax deed, and denied that their deed was void, etc. Replication was filed and the cause referred to George Mills Rogers, master in chancery, to take proof of all the material allegations in the said bill and report the same to the court, with his opinion on the law and the evidence. The cause was heard on the report of the master, together with the evidence and exhibits, and the court found that the master had complied with all the provisions of the order of reference and that the issues are with the petitioner. Objections were filed to the master's report, and exceptions, which were practically the same as the objections, were filed in the circuit court and were overruled. A decree was entered in accordance with the facts set out in the petition and all costs were adjudged against the petitioner, Flanedy, and an appeal was prayed by Glos and allowed to the Supreme Court.

Of the numerous exceptions filed and overruled by the court none but the second was discussed by appellant, and under our view of the law the overruling of this exception is reversible error and disposes of the case, the same being as follows:

"*Second*—For that said report is not based on the evidence presented by both parties to said proceeding, as directed by the order of reference herein, but is based on the evidence offered by the petitioner, said master having refused this defendant an opportunity to present evidence in his behalf before him, excepting as to the examination in chief as to one witness."

During the progress of the taking of testimony the following took place between appellant and the master:

The master: "Let's see; I want some sort of an understanding here. It just occurred to me a little while ago. I want it understood that I am not employing these stenographers; that I am here ready to take the testi-

mony myself, if anybody wants to do it that way. In other words, I am not responsible, personally, for 'the taking of the testimony by these stenographers, and I expect to charge for my services as master, independent of the stenographers' charges. In other words, my position is, that unless you gentlemen are willing to employ stenographers for your own convenience in the case, I am prepared to take it myself.

Mr. Glos: "I am satisfied that the master should take it in longhand. This is not my case, and I am simply here as defendant."

After taking some testimony on this day the hearing was adjourned to a subsequent day. The record shows: "Mr. Glos said he was ready to proceed with his testimony. The master told him he had sent him a bill for taking testimony on his behalf ($2.60) and it had not been paid, and that he would not render further services to Mr. Glos until the bill was paid. Mr. Glos refused to pay the bill, and after discussion the cause was continued until the 13th of November. At that meeting the master demanded of appellant $5 for the time consumed at the last hearing, which appellant refused to pay and offered to proceed with the evidence, and asked to cross-examine certain witnesses that had been examined for the petitioner. This the master refused, and refused to hear further evidence without the payment of fees, and continued the hearing until the 20th of November. At that meeting the master stated that he had no technical right to demand the $5 previously demanded and would forego the payment of that amount, but would insist upon the payment of the bill that he had rendered for testimony taken, before proceeding further with the case or allowing appellant to examine or cross-examine any other witnesses. Counsel for appellant then stated that appellant would not pay the taxed costs, and tendered appellant as a witness and asked to be allowed to proceed with the testimony, which the master refused. Wit-

nesses for petitioner, in rebuttal, were then called and testified, but the master refused to permit appellant to cross-examine such witnesses, stating to appellant: 'You have the matter in your own hands. You can have your opportunity at any minute by paying for it. I guess Mr. Glos is able to pay the $2.60, or whatever it is.'"

The master in chancery, by virtue of his office, has certain powers and duties to perform. Some of these duties are purely ministerial, for the performance of which he derives his authority from the statute, such as administering oaths, acknowledging deeds and taking depositions, in the discharge of which duties he is allowed by law to charge the fees provided by the statute and to demand the payment from those for whom, and as, the services are performed. There are other duties, judicial or semi-judicial, performed by him by virtue of the statute, such as hearing applications for writs of *ne exeat*, injunction and *habeas corpus*. In the matters of application for *ne exeat* and injunction the statute expressly provides that the fee shall be $5, "to be advanced by the complainant and taxed with the costs." This latter is the only provision in the statute, wherein such officers are called upon to perform duties of a judicial or semi-judicial character, directly authorizing the master to demand his fees from the litigant. In all matters, when appointed by the chancellor, by virtue of his office, such as the taking and reporting of testimony, computing the amount due on which to render a decree and making report thereof, examining questions of law and fact in issue by the pleadings and reporting conclusions, and all other matters where his authority is derived from an order of the court, the master is then a part of the court and his fees and compensation are constantly subject to the supervision of the court, and we know of no authority, statutory or otherwise, which authorizes him to demand of the parties litigant, as the causes proceed before him under references from the court, the payment of

the fees or any part thereof. The law is that such fees shall be taxed as costs, (Starr & Cur. Stat. 1896, chap. 90, sec. 9,) and the courts will not suffer their proceedings to be impeded or interfered with by the quibbles of officers and litigants as to the payment or advancement of fees. It was wholly within the discretion of the master whether he would employ or use a stenographer in the taking of the testimony. It is his duty to take it, and the court is not concerned as to the manner in which he does that,—whether it be by a stenographer and the notes transcribed under the direction of the master, or whether it be in longhand, in the writing of the master or some other person under his direction. If the master deems it desirable to have the services of a stenographer he unquestionably has that right, but in such case the stenographer is in the employ and subject to the control of the master, and not of the parties or either of them, and the stenographer must look to the master for his compensation. (*Schnadt* v. *Davis*, 185 Ill. 476.) Under the order of reference it was the duty of the master to take the evidence of the witnesses and reduce it to writing, and it was likewise his duty to not only take the evidence of the witnesses adduced by the petitioner, but also of those adduced by the defendant, and to accord to each party the full right of cross-examination. To do less would be but to make a pretense of inquiry and bring upon a court of equity unjust and undeserved reproach; and when the evidence was taken it was the duty of the master to report it to the court with his conclusions, as such was the order of reference, with his costs noted upon his report, so that the same might be subject to the order of the chancellor and taxed to the proper parties.

The decree will be reversed and the cause remanded for further proceedings in conformity with the views herein expressed.          *Reversed and remanded.*

HAND, C. J., and CARTWRIGHT, J., dissenting.